IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHEN JOE SEIDEL | § | |
| | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 4:15-cv-581 |
| NEW CANEY INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | DEMAND FOR JURY TRIAL |
|    Defendant | § | |

**PLAINTIIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[1]**

Plaintiff Stephen Seidel files this Response to Defendant New Caney Independent School

District's Motion for Summary Judgment.[2]

---

[1] This Response and all references to evidence in this Response are subject to and without waiving Plaintiff's Objections to Defendant's Purported Summary Judgment Evidence (being filed concurrently with the filing of this Response) and the objections therein. Plaintiff requests the Court enter a written order on Plaintiff's Objections to Defendant's Purported Summary Judgment Evidence before considering Defendant's Motion for Summary Judgment.

[2] Docket No.  ("D.N.") 35.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………....…iv

I..  NATURE AND STAGE OF THE PROCEEDING…………………………1

II.  ISSUES AND STANDARDS OF REVIEW………………………………1

III..  ARGUMENT SUMMARY………………………………………………3

IV.  ARGUMENT……………………………………………………………5

A.  NCISD HAS NOT PROVEN ENTITLEMENT TO SUMMARY
    JUDGMENT ON THE PURPORTED BASIS THAT A FAILURE-
    TO-ACCOMMODATE CLAIM DOES NOT EXIST IN THE
    FIFTH CIRCUIT WHEN THE EMPLOYER HAS WITHDRAWN
    AN ACCOMMODATION…………………………………………………5

B.  NCISD HAS NOT PROVEN THAT AS A MATTER OF LAW IT
    DID NOT FAIL TO REASONABLY ACCOMMODATE…………………………6

    (1)  Even if Redden Was Not a Supervisor (which She Was), that
         Would Not Entitle NCISD to Summary Judgment. …………………………6

    (2)  NCISD Has Not Proven that as a Matter of Law Redden Was
         Not a Supervisor (in other Words, Whether Redden Was a
         Supervisor Is an Issue for which Reasonable Minds Could
         Disagree). ……………………………………………………………..8

    (3)  It Was Not Just Redden's Conduct by which NCISD Withdrew
         the Accommodations But Also by Conduct of Other NCISD
         agents  (Hoisington [Dean of Instruction]), Bridget Heine
         [Assoc. Principal], and Loyacano [Principal]). …………………………14

C.  NCISD'S INTERACTIVE-PROCESS-BREAKDOWN
    ARGUMENT DOES NOT SUPPORT SUMMARY JUDGMENT. ……………18

    (1)  Plaintiff Has Not Asserted a Claim Based on Interactive-
         Process Breakdown. ……………………………………………….……18

    (2)  NCISD Has Not Proven that as a Matter of Law Seidel Failed
         to Act in Good Faith in the Interactive Process and Thus
         Caused a Breakdown in the Interactive-Process (in other
         Words, such Is an Issue for which Reasonable Minds  Could
         Disagree). ……………………………………………………………20

         a.  NCISD Has Not Proven that as a Matter of Law Seidel
             Failed to Act in Good Faith in the Interactive Process
             (in other Words, such Is an Issue for which Reasonable
             Minds Could Disagree). …………………………………………20

   b. <u>NCISD Has Not Proven that as a Matter of Law Seidel</u>
     <u>Caused a Breakdown in the Interactive-Process by</u>
     <u>His Purported Failure to Act in Good Faith in the</u>
     <u>Interactive Process (in other Words, such Is an Issue</u>
     <u>for which Reasonable Minds Could Disagree)</u>. ..................... 24

**V.  CONCLUSION**.................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Abbott v. Equity Group*, Inc., 2 F.3d 613 (5th Cir.1993) ………………………………………2

*Adams v. Kraft*, No.: 5:10-CV-00602-LHK, 2011 U.S. Dist. LEXIS 83317
(N.D. Cal. July 29, 2011) …………………………………………………………..8

*Andazola v. Logan's Roadhouse, Inc.*, 871 F. Supp. 2d 1186 (N.D. Ala. 2012) ……………..10

*Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473 (5th Cir. 2008)....…………………………..19

*Austin v. Wal-Mart Stores, Inc.*, Civil No. 07-1306-HA, 2008 U.S. Dist. LEXIS
93522 (D. Or. Nov. 14, 2008)...………………………………………………3, 10, 12

*Barrett v. Pa. Steel Co.*, Civ. Act. No. 2:14-CV-01103, 2014 U.S. Dist. LEXIS
98465 (E.D. Pa. July 21, 2014) …………………………………………….………..8

*Beck v. University of Wisconsin Bd. of Regents*, 75 F.3d 1130 (7th Cir. 1996) ……………...20

*Brandon v. Sage Corp.*, 808 F.3d 266 (5th Cir. 2015) ……………………………………19

*Buffi v. Sinclair Oil Co.*, No. 2:12-CV-92 TS, 2012 U.S. Dist. LEXIS 97978
(D. Utah July 13, 2012) …………………………………………….…………………9

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) ……………………………………….7

*Chao v. Patrinos*, No. 8:06V23, 2007 U.S. Dist. LEXIS 28073 (D. Neb. Apr. 9, 2007) ………10

*Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567 (5th Cir. 2002) ……………………………………7

*EEOC v. Agro Distrib. LLC*, 555 F.3d 462 (5th Cir. 2009) ……………………….……………18

*Elder v. Stephens*, Civ. Act. No. H-13-2868, 2015 U.S. Dist. LEXIS 7333
(S.D. Tex. Jan. 22, 2015) …………………………………………….…………………8

*Enica v. Principi*, 544 F.3d 328 (1st Cir. 2008) ……………………………….……15, 16, 22

*Ewing v. Doubletree DTWC LLC*, No. 2:14-CV-00526 DS, 2016 U.S. Dist. LEXIS
23067, (D. Utah Feb. 24, 2016) ………………………………………...……………8

*Ford v. Nicks*, 703 F. Supp. 1296 (M.D. Tenn. 1988) …………………………………….……11

*Faulkner v. Kornman (In re Heritage Org., L.L.C.)*, 413 B.R. 4381
(Bankr. N.D. Tex. 2009) ………………………………………………...…………13

*Feist v. Louisiana*, 730 F.3d 450 (5th Cir. 2013) ……………………………………...………5

*Galindo v. Precision Am. Corp.*, 754 F.2d 1212 (5th Cir. 1985) ………………………….……8

*Gentner v. Cheyney Univ.*, Civ. Act. No. 94-7443, 1999 U.S. Dist. LEXIS 15905
(E.D. Pa. Oct. 14, 1999) ………………………………………………………………11

*Gilbert v. City of St. Charles*, No. 96 C 7101, 1999 U.S. Dist. LEXIS 4095
(N.D. Ill. 1999) ………………………………………….…………………………24

*Griffin v. UPS*, 661 F.3d 216 (5th Cir. 2011) …………………………………………………20

*Hardy v. Ala. Dep't of Indus. Rels.*, Civ. Act. No. 2:11cv230-SRW, 2013 U.S. Dist.
LEXIS 45154 (M.D. Ala. Mar. 29, 2013) ………………………………………..6

*Harter v. Univ. of Indianapolis*, 5 F. Supp. 2d 657 (S.D. Ind. 1998) …………………………20

*Hemphill v. City of Wilmington*, 813 F. Supp. 2d 592 (D. Del. 2011) ……………………..10

*Hill v. St. Louis Univ.*, 123 F.3d 1114 (8th Cir. 1997) ………………………………………..11

*Hoyt v. Dep't of Children & Families*, 309 F. Supp. 2d 299 (D. Conn. 2004) ……………..…11

*Isbell v. John Crane, Inc.*, 30 F. Supp. 3d 725 (N.D. Ill. 2014) ……………………………,,,6, 18

*Ishee v. Fannie Mae*, No. 15-60129, 2016 U.S. App. LEXIS 4726 (5th Cir. Mar. 14, 2016) ….24

*Jacklovich v. Metropolitan Water Reclamation Dist.*, No. 92 C 5471, 1994 U.S. Dist.
   LEXIS 16351 (E.D. Ill. Nov. 14, 1994) ……………………………………………………..11

*Johnson v. Masterfoods USA*, No. 5:09-CT-3094-D, 2011 U.S. Dist. LEXIS 48872
   (E.D.N.C. May 6, 2011) …………………………………………………………………….8

*Leatherwood v. Mobile Hous. Bd.*, Civ. Act. No. 09-00410-CB-N, 2010 U.S. Dist.
   LEXIS 78939 (S.D. Ala. Aug. 4, 2010) ……………………………………………..………10

*Levinson v. Prentice-Hall, Inc.*, 868 F.2d 558 (3d Cir. 1989) ………………………………..11

*Lopez v. Kempthorne*, 684 F. Supp. 2d 827 (S.D. Tex. 2010) …………………………………7

*Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731 (5th Cir. 1999) ……………………………..6, 18, 19

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ……………………10

*Memon v. Chippewa Valley Tech. College*, 14-cv-243-jdp, 2015 U.S. Dist. LEXIS 110063
   (W.D. Wis. Aug. 20, 2015) ………………………………………….…………………………10

*Miller v. Crystal Lake Park Dist.*, 47 F.3d 865 (7th Cir. 1995) ……………………………9. 11

*Miller v. Univ. of Chi.*, No. 05-CV-01663, 2007 U.S. Dist. LEXIS 7550
   (N.D. Ill. Jan. 29, 2007) ……………………………………………………………………..10

*Ned v. Opelousas Gen. Hosp.*, Civ. Act. No. 04-1536, 2007 U.S. Dist. LEXIS 21816
   (W.D. La. Mar. 26, 2007) …………………………………………………………………….19

*NLRB v. Shelby Memorial Hosp. Ass'n*, 1 F.3d 550 (7th Cir. 1993)…………………………11

*NLRB v. Wentworth Institute*, 515 F.2d 550 (1st Cir. 1975) ………………………………….11

*Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004) ………………………………….7

*Peterson v. Shins*eki, Civ. No. 11-cv-03036-CL, 2012 U.S. Dist. LEXIS 186402
   (D. Or. Dec. 20, 2012) …………………………………………….…………………………24

*Ragan v. Jeffboat LLC*, 149 F. Supp. 2d 1053 (S.D. Ind. 2001) ……………………………14, 25

*Rodriguez v. Calace*, Civ. No. 3:07CV200 (WWE), 2011 U.S. Dist. LEXIS 65368
   (D. Conn. June 20, 2011) …………………………………………………………………...10

*Rossi v. Fulton County*, Civ. Act. No. 1:10-CV-4254-RWS-AJB, 2013 U.S. Dist. LEXIS
   44755 (N.D. Ga. Feb. 8, 2013) ……………………………………………….………………8

*Ryals v. Azalea City Racing Club, Inc.*, No. 77-493-H, 1977 U.S. Dist. LEXIS 13057
   (S.D. Ala. 1977) ………………………………………………………………………………...8

*Sansone v. Donahoe*, 98 F. Supp. 3d 946 (N.D. Ill. 2015) …………………………………….6

*Shatzer v. Rite Aid Corp.*, Civ. Case No. 13-233, 2015 U.S. Dist. LEXIS 107317
   (W.D. Pa. Aug. 14, 2015) …………………………………………………………………….9

*Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486 (5th Cir. 2012) …………..2

*Sonoda v. Cabrera*, 255 F.3d 1035 (9th Cir. 2001) ……………………………………………11

*Straughn v. Tex. Powertrain Assembly, LLC*, Civ. No. 5:13-CV-708-DAE, 2014 U.S. Dist. LEXIS 150282 (W.D. Tex. Oct. 22, 2014) …………………………………………..7

*Valentine v. American Home Shield Corp.*, 939 F. Supp. 1376 (N.D. Iowa 1996) ………6, 23, 24

*Walton v. Mental Health Ass'n*, 168 F.3d 661 (3d Cir. 1999) ……………………………………6

**Statutes**

10 U.S. C. § 892 - Art. 92…………………………………….………………………...10, 22

**Rules**

Fed. R. Evid. 801(d)(2) …………………………………….…………………………11

## I.      NATURE AND STAGE OF THE PROCEEDING

Plaintiff Seidel— an Army veteran who served in the Iraq War and suffers from Post-Traumatic Stress Disorder—file this action against Defendant NCISD because of NCISD's failure to reasonably accommodate Seidel's disability. NCISD filed a summary-judgment motion and this document is Seidel's Response.

## II.   ISSUES AND STANDARDS OF REVIEW

NCISD's summary-judgment motion and this Response raise the following issues:

**1.   Summary-Judgment Irrelevancy of Redden Supervisor Status: Respondeat-Superior Legal Bases.**  Under agency principles, respondeat superior does not depend on an employee's supervisory status. NCISD's summary-judgment motion has not raised the issue of an employee's tortious conduct while acting outside the scope of employment; but even for that non-raised issue, respondeat superior can exist even where the employee is not a supervisor.  Can Redden's purported lack of supervisory status even support a summary judgment on NCISD's respondeat-superior liability?

**2.   Summary-Judgment Irrelevancy of Redden Supervisor Status: Other-NCISD-Agents' Conduct.**  NCISD's motion appears to assert that if NCISD is not vicariously liable for Redden's conduct, then NCISD cannot be liable. However, NCISD's failure to accommodate occurred not just by Redden's conduct but also by the conduct of other NCISD agents.  If NCISD's motion has not asserted as part of its summary-judgment bases and proven as a matter of law NCISD's non-liability for all its agents' conduct, is NCISD entitled to summary judgment?

**3.   Genuine Issue of Material Fact: Redden Supervisory Authority.**  Could reasonable minds disagree regarding whether Redden had some supervisory authority?

**4.   Interactive Process to Determine What is a Reasonable Accommodation.**  The interactive process is in order to determine what is a reasonable accommodation. Before lip-dub day, the parties had agreed to what accommodation was reasonable. Thus, on lip-dub day there was not interactive process pending. Can summary-judgment be granted on the basis of interactive-process breakdown and acts that occurred after the interactive process ended?

**5.   Genuine Issue of Material Fact: Failure to Act in Good Faith in the Interactive Process.**  Could reasonable minds disagree regarding whether Seidel failed to act in good faith in the interactive process?

**6.   Genuine Issue of Material Fact: Good-Faith-Failure Causation of Interactive-Process Breakdown.**  Could reasonable minds disagree regarding whether any purported Seidel failure to act in good faith in the interactive process caused a breakdown of that interactive process?

**STANDARDS OF REVIEW:**  Both conclusions of law (issues 1, 2, and 4 above) and orders granting summary judgment (issues 3, 5, and 6 above) are reviewed de novo.[3]

## III.  ARGUMENT SUMMARY

The duty to provide reasonable accommodation is a continuing one and not exhausted by one effort. If an employer gives a reasonable accommodation at one point in time, it is not insulated from liability for failing to give a reasonable accommodation at another point in time.

NCISD's argument that it did not fail to accommodate because respondeat superior does not apply for Redden's conduct because she purportedly was not a supervisor fails.  First, under agency principles, respondeat superior does not require an employee be a supervisor.

---

[3] *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012); *Abbott v. Equity Group*, Inc., 2 F.3d 613, 618 (5th Cir.1993).

Supervisory status relates to a circumstance not raised by NCISD's motion—tortious conduct by an agent acting outside the scope of her employment. Further, supervisory status is only one of several ways that an employer can, under agency principles, be liable for its agent acting outside the scope of employment.  Thus, even as to this not-presented issue (agent conduct outside the scope of employment) because NCISD has not refuted (or even addressed) *all* such employer liability bases, NCISD would not be entitled to summary judgment. Thus, NCISD's arguments that Redden was purportedly not a supervisor are irrelevant. Whether Redden was a supervisor is immaterial; either way, NCISD is not entitled to summary judgment.

Second, NCISD has not proven that as a matter of law Redden was not a supervisor. NCISD relies on non-probative conclusory statements. Conversely, Redden was the "department head" (a term often used to indicate some supervisory authority and, thus, a term from which some supervisory authority can be inferred) over Seidel. Viewing the evidence in the light most favorable to the summary-judgment nonmovant, Redden ordered Seidel to attend the lip dub and ordered him clear his non-attendance with administrators. Redden was a department head "whose suggestions plaintiff could be expected to follow"[4] and whose order (to attend the lip dub) Seidel did follow. Later, after Seidel's lip-dub-initiated flashback, Redden apologized for ordering him to the event, stating, "*Sorry*, We *needed everybody* there! [Emphases added]."

Third, NCISD's failure to accommodate resulted from conduct not just of Redden but also of other NCISD agents. NCISD's Dean of Instruction and Associate Principal ordered (e.g., "YOU MUST WALK and SIT WITH YOUR ASSIGNED STUDENTS IN THE BLEACHERS[.]") all teachers (a group including Seidel) to attend the event.  At the lip dub, other NCISD agents pressured Seidel further into the gym. Further, agreeing to an

---

[4] *Austin v. Wal-Mart Stores, Inc.*, Civil No. 07-1306-HA, 2008 U.S. Dist. LEXIS 93522, at *27 (D. Or. Nov. 14, 2008) (stating, ". . . , Mast was a merchandising supervisor whose suggestions plaintiff could be expected to follow."). Unpublished and similar opinions are included in the attached Appendix.

accommodation is not the same as providing an accommodation.  NCISD failed to implement the accommodation. Its Principal did not notify other NCISD agents of Seidel's agreed-on accommodation and the necessity of its implementation, even after receiving the sent-to-all-teachers "YOU MUST WALK AND SIT WITH . . ." Dean-of-Instruction's emailed order.

Because NCISD's motion fails to refute all NCISD agents' conduct as a respondeat-superior liability basis, NCISD fails to prove entitlement to summary judgment.

Likewise, NCISD's interactive-process-breakdown argument does not support summary judgment. First, this case does not involve breakdown of the process for determining what is a reasonable accommodation. Rather, this case involves failure to provide an already agreed-on accommodation.

Second, there is more than a scintilla of evidence that Seidel acted in good faith regarding both the interactive process (i.e., regarding working toward a determination of a reasonable accommodation) and NCISD- implementation of the agreed-on accommodation. Seidel requested and negotiated the agreed-on accommodation. On the last day of the fall semester—which was an early-release day, a day of preparation for the entire-student-body lip dub, and a day in which Seidel had only one school period without class and no period without responsibility for students in his classroom (per Principal Loyacano, "the safety of students is the paramount concern for all employees at NCHS, and this is especially true of classroom teachers")—just a few hours before lip dub, Redden ambushed Seidel by ordering him to attend the lip dub. It is not surprising that, after Redden refused to change her order despite Seidel's protestations, Seidel obeyed that order by his department head, particularly in light of the prior to-all-teachers orders of  NCISD's Dean of Instruction and Associate Principal, the need for teacher supervision of Seidel's students, NCISD's failure to send an agent to take Seidel's

students to and attend with at the lip dub, and the paramount concern for student safety (i.e., the need for teacher supervision of Seidel's students while moving to and attending the lip dub).

## IV.  ARGUMENT

### A.  NCISD HAS NOT PROVEN ENTITLEMENT TO SUMMARY JUDGMENT ON THE PURPORTED BASIS THAT A FAILURE-TO-ACCOMMODATE CLAIM DOES NOT EXIST IN THE FIFTH CIRCUIT WHEN THE EMPLOYER HAS WITHDRAWN AN ACCOMMODATION.

NCISD appears to imply that a failure-to-accommodate claim does not exist in the Fifth Circuit when an employer has withdrawn a reasonable accommodation.[5] In other words, NCISD appears to argue that if an employer gives a reasonable accommodation at one point in time, it is insulated from liability for failing to give a reasonable accommodation at another point in time.

Such argument is inconsistent with the elements of a failure-to-accommodate claim:

(1)  plaintiff is a qualified individual with a disability;

(2)  the disability and its consequential limitations were known by the covered employer; and

(3)  the employer failed to make reasonable accommodations for such known limitations.[6]

Element (3) is met if there was a failure to reasonably accommodate; there is no exception for if the employer made a reasonable accommodation at a different point in time. "'The duty to provide reasonable accommodation is a continuing one . . . and not exhausted by one effort.'"[7]

NCISD fails to cite a single case stating that if an employer gives a reasonable accommodation at one point in time, it is insulated from liability for failing to give a reasonable accommodation at another point in time. Rather, the courts have applied failure-to-accommodate-

---

[5] Motion at 12.

[6] *Feist v. Louisiana*, 730 F.3d 450, 452 (5th Cir. 2013); *accord* Motion at 11, 12.

[7] *Enica v. Principi*, 544 F.3d 328, 343 (1st Cir. 2008) (quoting *Ralph v. Lucent Techs.*, 135 F.3d 166, 172 (1st Cir. 1998)).

claim principles when an employer has withdrawn a reasonable accommodation.[8]  As the Fifth

Circuit stated in *Loulseged*:

> [Plaintiff] correctly conceded that an employer is free to withdraw an accommodation *as long as the replacement accommodation is reasonable*.[9]

As this Court has stated:

> . . . , Defendants assert that New Caney ISD "never denied Seidel's accommodation requests." (Doc. No. 23 at 6.)[.] But these arguments elide the amended complaint's key allegation that Ms. Redding withdrew the accommodation of patrolling hallways. Other courts have acknowledged that withdrawing an existing accommodation may give rise to liability under the ADA.[10]

## B.  NCISD HAS NOT PROVEN THAT AS A MATTER OF LAW IT DID NOT FAIL TO REASONABLY ACCOMMODATE.

NCISD's argument that it did not fail to accommodate because respondeat superior does

not apply for Redden's conduct because she purportedly was not a supervisor fails because:

   i.   even if Redden was not a supervisor (which she was), that would not entitle NCISD to summary judgment;

   ii.   NCISD has not proven that as a matter of law Redden was not a supervisor; thus, summary judgment cannot be granted on the issue; and

   iii.   NCISD failure-to-accommodate occurred by the conduct of not just Redden but also of other NCISD agents (Dean of Instruction, Assoc. Principal, Principal, and others).

### (1)  Even if Redden Was Not a Supervisor (which She Was), that Would Not Entitle NCISD to Summary Judgment.

NCISD's motion assumes if Redden was not a supervisor then NCISD is not liable for

her actions. However, whether NCISD is liable for the actions of its science-department-chair

---

[8] *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 n.4, 740 n.11 (5th Cir. 1999);  *Walton v. Mental Health Ass'n*, 168 F.3d 661, 671 (3d Cir. 1999); *Hardy v. Ala. Dep't of Indus. Rels.*, Civ. Act. No. 2:11cv230-SRW, 2013 U.S. Dist. LEXIS 45154, at *24–*26 (M.D. Ala. Mar. 29, 2013); *Sansone v. Donahoe*, 98 F. Supp. 3d 946, 949, 954 (N.D. Ill. 2015); *Isbell v. John Crane, Inc.*, 30 F. Supp. 3d 725, 734 (N.D. Ill. 2014); *Valentine v. American Home Shield Corp.*, 939 F. Supp. 1376, 1379, 1401 (N.D. Iowa 1996). Contrary to NCISD's argument, *Sansone* does not state that a supervisor revoked the plaintiff's accommodation.

[9] *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 740 n.11 (5th Cir. 1999) (emphasis added).

[10] D.N. 28 (of the present suit) at 7.

Redden depends on agency principles, including apparent authority and respondeat superior.[11]

An employee need not be a supervisor for the employer to be held liable under agency principles.[12] Supervisory status relates to a narrow, specific circumstance not raised by NCISD's motion[13]—tortious conduct by a servant acting outside the scope of his employment.[14]

Further, supervisory status is only one of several ways that an employer can, under agency principles, be liable for its agent acting outside the scope of employment.[15] Thus, lack of supervisory status does not support summary judgment even in the not-presented-by-NCISD's-motion issue of agent's conduct outside the scope of employment. NCISD has not refuted (or even addressed) *all* employer liability bases to the outside-the-scope-of-employment situation.

Thus, NCISD's arguments that Redden was purportedly not a supervisor are irrelevant. NCISD's respondeat superior liability does not depend on Redden being a supervisor.

Further, as discussed below in section IV.B.(3), NCISD's failure to accommodate occurred not solely by Redden's conduct, but by the conduct of other NCISD agents as well. Thus, NCISD's motion addressed solely to Redden's conduct fails to prove entitlement to summary judgment.

---

[11] *Pennsylvania State Police v. Suders*, 542 U.S. 129, 144, 145 (2004); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754–60 (1998); *Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 54–75 (5th Cir. 2002), *cert. denied*, 540 U.S. 810 (2003); *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 850 (S.D. Tex. 2010).

[12] *Ellerth*, 524 U.S. at 758–60.

[13] NCISD's motion does not assert as a summary-judgment basis that its agents (including Redden) were acting outside the scope of their employment when they instructed Seidel to attend the "lip dub" rally. Motion (D.N. 13), generally. Thus, this Response does not address that issue of whether NCISD's agents acted outside the scope of their employments.

[14] *Ellerth*, 524 U.S. at 758 (discussing § 219(2) of the Restatement (Second) of Agency); *see also Straughn v. Tex. Powertrain Assembly, LLC*, Civ. No. 5:13-CV-708-DAE, 2014 U.S. Dist. LEXIS 150282, at *39, *40 (W.D. Tex. Oct. 22, 2014) (stating, "Although the parties provided briefing related to the definition of 'supervisor' . . . , that definition is inapplicable here. Vance's definition of supervisor is limited to the Ellerth/Faragher defense, which is only relevant when a supervisor is the perpetrator of the harassment. [Citation omitted]").

[15] *Ellerth*, 524 U.S. at 758.

### (2) NCISD Has Not Proven that as a Matter of Law Redden Was Not a Supervisor (in other Words, Whether Redden Was a Supervisor Is an Issue for which Reasonable Minds Could Disagree).

Even aside from supervisory status being an issue insufficient to support summary judgment in this case, whether Redden was a supervisor is an issue for which reasonable minds could differ, for several reasons. First, NCISD's purported evidence consists of conclusory statements such as that Redden is not a "supervisor," which are conclusory[16] and, thus, inadmissible.[17]  Similarly, statements that Redden had "no authority" to "take action . . . regarding the employment of" teachers are conclusory,[18] as well as so vague as to have no meaningful probative value (What does "take action regarding the employment of" include and not include?[19] The affiants provide no explanation.).[20]

Even beyond inadmissibility, conclusory statements have no probative value.[21] Because NCISD's purported evidence is conclusory, inadmissible, and non-probative, NCISD has failed to prove that Redden was (at relevant times), as a matter of law, not a supervisor.

Second, even ignoring its conclusory nature, NCISD's purported evidence has little or no probative value on whether Redden was a supervisor—much less proves as a matter of law that she was not a supervisor. Evidence of whether Redden was an "administrator" is non-probative

---

[16] *Barrett v. Pa. Steel Co.*, Civ. Act. No. 2:14-CV-01103, 2014 U.S. Dist. LEXIS 98465, at *13 (E.D. Pa. July 21, 2014); *Adams v. Kraft*, No.: 5:10-CV-00602-LHK, 2011 U.S. Dist. LEXIS 83317, at *16, *37, *61, *65–*67 (N.D. Cal. July 29, 2011);  *Johnson v. Masterfoods USA*, No. 5:09-CT-3094-D, 2011 U.S. Dist. LEXIS 48872, at *5 (E.D.N.C. May 6, 2011); *Ryals v. Azalea City Racing Club, Inc.*, No. 77-493-H, 1977 U.S. Dist. LEXIS 13057, at *10 n.1 (S.D. Ala. 1977).

[17] *Ewing v. Doubletree DTWC LLC*, No. 2:14-CV-00526 DS, 2016 U.S. Dist. LEXIS 23067, at *16 (D. Utah Feb. 24, 2016).

[18] *See Rossi v. Fulton County*, Civ. Act. No. 1:10-CV-4254-RWS-AJB, 2013 U.S. Dist. LEXIS 44755, at*52 (N.D. Ga. Feb. 8, 2013), adopted, 2013 U.S. Dist. LEXIS 40889 (N.D. Ga. Mar. 22, 2013).

[19] *See id.* at *51 (discussing employment decisions working a material alteration on the terms of employment, in Title VII context).

[20] *See* Plaintiff's Objections to Defendant's Purported Summary Judgment Evidence, which is incorporated herein as if set forth in its entirety in verbatim.

[21] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Elder v. Stephens*, Civ. Act. No. H-13-2868, 2015 U.S. Dist. LEXIS 7333, at *48 (S.D. Tex. Jan. 22, 2015);  *Ryals*, 1977 U.S. Dist. LEXIS 13057, at *10 n.1 (S.D. Ala. 1977) (discussing a witness's denial of being a supervisor).

of whether she was a supervisor. NCISD cites no legal authority for is implied assertion that "administrator" is legally (or otherwise, for that fact) synonymous with the legal meaning of "supervisor." Likewise, her status as a teacher is not mutually exclusive from supervisor status. Similarly, vague, conclusory testimony of Principal Loyacano purportedly being "the ultimate decision maker" is non-probative of Redden's supervisory status.[22]

"The 'most obvious supervisory powers include the power 'to hire and fire, and to set work schedules and pay rates.' . . . *However, complete authority is not required* [emphasis added]. . . . Determining whether an individual has sufficient supervisory power is a fact-intensive inquiry principally hinging upon whether an employee is sufficiently senior that knowledge of discrimination is important to his or her managerial duties. . . . The Court must distinguish employees 'who are supervisors merely as a function of nomenclature from those who are entrusted with actual supervisory powers.'"[23] In *Shatzer*, though the employee's "position description explicitly excluded hiring, firing, or disciplining associates," the "Plaintiff advanced sufficient evidence that [the employee and another employer] could be considered managers for purposes of finding respondeat superior liability[.]"[24]

"[A] 'supervisory employee need not have ultimate authority to hire or fire to qualify as an employer, as long as he or she has significant input into such personnel decisions.'[25] As another court explained, "Even if [employee] was not a direct supervisor with authority to 'formally evaluate, discipline, or discharge' plaintiff, [employee] was a merchandising

---

[22] *See Miller v. Crystal Lake Park Dist.*, 47 F.3d 865, 868 (7th Cir. 1995) (noting, "The governing board . . . retains ultimate authority. It has delegated some managerial powers to Department Heads . . . ").

[23] *Shatzer v. Rite Aid Corp.*, Civ. Case No. 13-233, 2015 U.S. Dist. LEXIS 107317, at *16, *17 (W.D. Pa. Aug. 14, 2015) (internal citations omitted).

[24] *Id.* at *18, *19.

[25] *Buffi v. Sinclair Oil Co.*, No. 2:12-CV-92 TS, 2012 U.S. Dist. LEXIS 97978, at *13 (D. Utah July 13, 2012) (discussing Title VII claims).

supervisor whose suggestions plaintiff could be expected to follow."[26] Similarly, in the present case, there is evidence from which a reasonable jury could conclude that science-teacher Seidel could be expected to (and, in fact did) follow science-department-head Redden's orders.

Further, from vague, conclusory testimony of Principal Loyacano purportedly being "the ultimate decision maker," a reasonable inference can be drawn that others are also "decision makers" though Loyacano could overrule their decisions if they were brought to his attention.

Further, NCISD's strained analogy to military orders fails. Though a captain, at one point in time, orders a private to, for example, "stay" does not permit the sergeant to ignore a later order by a lieutenant to "move out."[27]

Third, viewing the evidence in the light most favorable to nonmovant Seidel and drawing all reasonable inferences in his favor,[28] NCISD's own offered evidence raises a genuine issue of material facts as to whether Redden had any supervisory authority. For example, Seidel was a teacher in NCISD's science department and Redden was the science-department head.[29] Although NCISD downplays Redden's job title of science-department head,[30] reasonable inferences of supervisory or similar authority can often be drawn from job titles.[31] "[T]hough '[t]itles of office generally do not *establish* apparent authority," [citation omitted] ([quoting

---

[26] *Austin*, 2008 U.S. Dist. LEXIS 93522, at *27 (discussing failure-to-accommodate claim).

[27] *See* 10 U.S.C. § 892 - Art. 92 ("Failure to obey order or regulation") (stating, "Any person subject to this chapter who—

(1) violates or fails to obey any lawful general order or regulation; (2) having knowledge of any other lawful order issued by a member of the armed forces, which it is his duty to obey, fails to obey the order; or . . . ; shall be punished as a court-martial may direct.").

[28] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

[29] Motion at 1, 3, 7;  Redden Aff. (Def. Exh. D) at ¶¶ 3, 5.

[30] Further, NCISD's conclusory statements have been addressed earlier in this Response.

[31] *Miller v. Univ. of Chi.*, No. 05-CV-01663, 2007 U.S. Dist. LEXIS 7550, at *55 (N.D. Ill. Jan. 29, 2007); *see also Memon v. Chippewa Valley Tech. College*, 14-cv-243-jdp, 2015 U.S. Dist. LEXIS 110063, at *15 n.4 (W.D. Wis. Aug. 20, 2015); *Andazola v. Logan's Roadhouse, Inc.*, 871 F. Supp. 2d 1186, 1220, 1221 (N.D. Ala. 2012); *Rodriguez v. Calace*, Civ. No. 3:07CV200 (WWE), 2011 U.S. Dist. LEXIS 65368, at *4 (D. Conn. June 20, 2011); *Hemphill v. City of Wilmington*, 813 F. Supp. 2d 592, 599, 600 (D. Del. 2011); *Leatherwood v. Mobile Hous. Bd.*, Civ. Act. No. 09-00410-CB-N, 2010 U.S. Dist. LEXIS 78939, at *10 (S.D. Ala. Aug. 4, 2010); *Chao v. Patrinos*, No. 8:06V23, 2007 U.S. Dist. LEXIS 28073, at *5 (D. Neb. Apr. 9, 2007).

Court's] emphasis added), they 'are relevant insofar as they may have some tendency to suggest executive responsibility' [citation omitted]."

"Department head" is a term often used to indicate some supervisory authority (although that is obvious, cases cited below provide examples)[32] and, thus, use of that term connotes such authority. Though not dispositive, a reasonable inference can be drawn that a "department head" has some supervisory authority.

Redden conducted observations of Seidel's classroom.[33]

Further, after Seidel's conversation with Redden, felt "as though he had been directed to attend" the "lip dub."[34] If Redden had unambiguously denied she had directed Seidel to attend the lip dub or made any statements that would give him any reason to feel as though he had been

---

[32] See, e.g., *Hoyt v. Dep't of Children & Families*, 309 F. Supp. 2d 299, 302 (D. Conn. 2004) ("stating " . . . State School Department Head is a supervisory position[.]"); *Sonoda v. Cabrera*, 255 F.3d 1035, 1041 (9th Cir. 2001) (noting that a gubernatorial Executive Order declared that a certain "official shall report to and serve under the direction of the head of any supervisory official, such as a department head." Emphasis added); *Gentner v. Cheyney Univ.*, Civ. Act. No. 94-7443, 1999 U.S. Dist. LEXIS 15905, at *50 (E.D. Pa. Oct. 14, 1999) (stating, ". . . , Cheyney's Director of Human Resources, considered the department heads to be the only continuous position of a supervisory nature at Cheyney."); *Hill v. St. Louis Univ.*, 123 F.3d 1114, 1121 (8th Cir. 1997) (stating, " Dr. Andres' position as a department chair requires him to perform managerial duties."); *Miller*, 47 F.3d at 868 (noting, "The governing board of the Park District retains ultimate authority. It has delegated some managerial powers to Department Heads . . . "); *Jacklovich v. Metropolitan Water Reclamation Dist.*, No. 92 C 5471, 1994 U.S. Dist. LEXIS 16351, at *16 (E.D. Ill. Nov. 14, 1994) (stating, ". . . made the decision based on the recommendation of a department head who was at least two supervisory levels above Richmann."); *NLRB v. Shelby Memorial Hosp. Ass'n*, 1 F.3d 550, 554 (7th Cir. 1993) (stating, "An administrator, director of nursing, maintenance supervisor, and various department heads constitute the Home's supervisory staff."); *Levinson v. Prentice-Hall, Inc.*, 868 F.2d 558, 558 (3d Cir. 1989) (stating, "[T]he position of Supervisory Editor II . . . , a position also referred to as department head."); *Ford v. Nicks*, 703 F. Supp. 1296, 1301 (M.D. Tenn. 1988) (stating, "In a document entitled 'A Self Study of Middle Tennessee State Univ. 1972-73,' . . . , the following findings . . . were included in the report: . . . 6. Women rarely move into supervisory positions such as department heads."); *NLRB v. Wentworth Institute*, 515 F.2d 550, 557 (1st Cir. 1975) (stating, "[T]he Regional Director excluded from the unit the deans and department heads as supervisory personnel involved in the hiring, assigning, and directing of faculty.").

[33] Motion at 8 n.2 (discussing Seidel testimony and confusing testimony for an allegation); Def. Exh. C at deposition page 17. Although it appears NCISD tries to create the impression that it presents evidence contradicting Seidel's testimony that Reddend conducted such observations, under summary-judgment standards, Seidel's testimony has probative value for determining whether reasonable minds could disagree (i.e., contradictory evidence does not establish a fact or support summary judgment). Further, NCISD presents no evidence that directly contradicts Seidel's testimony; i.e., NCISD does not provide a clear, unambiguous denial by Redden that she never conducted such an observation. Rather and in a lawyerly fashion, NCISD asserts that NCISD does not *have any records* of Redden *formally* observing Seidel's classroom (Motion at 8 n.2) and Reeden's 2016 affidavits states, in a current-tense and qualified manner, she "*do[es]* not perform observations or appraisals of teachers *under NCISD Professional Development and Appraisal System*." Redden Aff. (Def. Exh. D) at ¶ 3.

[34] Motion at 2, 17; *see also* Fed. R. Evid. 801(d)(2) ("*An Opposing Party's Statement*").

---

11

so directed, in viewing the evidence in the light most favorable to Seidel the Court would be required to give Seidel's testimony probative value over Redden's conflicting testimony. However, Redden, in fact, did not so unambiguously deny.  Rather and notably, Redden states:

- she "discuss[ed] . . . the *instructions . . .  sent to the entire NCHS campus* [emphasis added] requesting that teachers escort their classes to the gym and sitting with their students once inside the gym;"[35]

- she, in response to Seidel "insist[ing][] he would not attend," "*told* [emphasis added] Seidel to clear his non-attendance with the campus administration [at the least implying he could not refuse unless absent further action];"[36] and

- she "*suggested*[37][emphasis added] that he" attend the event.[38]

Redden then further undercut her testimony with the qualification "That is how I *remember* the conversation concluding. [Emphasis added]." In short, Redden did not even unambiguously refute Seidel's testimony (though even if she had, the evidence would have to be viewed in the light most favorable to Seidel and all reasonable inferences drawn in his favor).  NCISD mistakes purportedly contradictory testimony with establishment of a fact as a matter of law.

Further, Redden's "discuss[ion] . . [of] the instructions," "t[elling]" Seidel to clear his non-attendance," and "suggest[ion]" that he attend must be evaluated in light of the context. Specifically, those statements were made (1) just a few hours before the event,[39] (2) after the

---

[35] Redden Aff. (Def. Exh. D) at ¶ 6.

[36] *Id.*

[37] *See Austin*, 2008 U.S. Dist. LEXIS 93522, at *27 (concluding a reasonable jury could find the employer failed to reasonably accommodate, in part because "[e]ven if [employee] was not a direct supervisor with authority to 'formally evaluate, discipline, or discharge' plaintiff, [employee] was a merchandising supervisor *whose suggestions plaintiff could be expected to follo*w." Emphasis added).

[38] *Id.*

[39] A period during which the entirety of Seidel was responsible for students in his care; between the Redding/Seidel conversation and the lip dub, Seidel was teaching three classes and during the less-than-an hour conference period Seidel had students in his classroom. Seidel Decl'n (Exh. 1) at ¶ 3.  Further, because lip-dub day was the last day of the fall semester (Motion at 5), an early-release day (*id.* at 8, 9), and a day of preparation for the entire-student-body (*id.* at 6) lip dub (*see id.* at  6 [discussing email preparatory instructions]; lip-dub video at https://www.youtube.com/watch?v=Cnhd3-vLabs [indicating the lip dub was a choreographed event])—it was a hectic day at NCISD.

Dean of Instruction and Associate Principal had sent a campus wide email,[40] the content of which, from how person's responses to and NCISD's statements regarding the email[41] and from NCISD's failure to offer the email[42] (i.e., removal of the attachment before offering the attached-to email as an exhibit), can be inferred to have instructed Seidel (as well as all other teachers) to attend the "lip dub," (3) after the Dean of Instruction sent a follow-up email directed to all teachers[43] and stating, "YOU MUST WALK AND SIT W/ YOUR ASSIGNED STUDENTS IN THE BLEACHERS[.] [Dean's original all-caps emphasis],"[44] and at a time when NCISD had not and did not later send anyone to escort Seidel's students to the entire-student-body-attendance[45] event.[46] Thus, when science-department-head Redden "discuss[ed] . . . the *instructions,"* "*told* Seidel to clear his non-attendance,"  and "*suggested* " he attend the event, it is not surprising that he felt directed to attend and attended despite his earlier expressed "insist[ance] [that] he would not attend."[47]

NCISD's own offered evidence further indicating *ordered* Seidel to attend the lip dub (orders being an indication of supervisory authority) is Redden's texted apology to Seidel:

"*Sorry*, We *needed everybody* there!"[48]

A reasonable jury could infer that this message indicates not an apology for a suggestion that Seidel on his own decided to adopt but rather was for an order that overrode Seidel's

---

[40] Motion at 6; Redden Aff. (Def. Exh. D) at ¶ 6; December 17, 2012 email (Def. Exh. C-5).

[41]  Motion at 6, 17 (stating, "Mr. Seidel made no effort to confirm with Ms. Loyacano whether his accommodation remained after he was notified of the "lip dub" *via* email on Monday, December 17, 2012").

[42] *See Faulkner v. Kornman (In re Heritage Org., L.L.C.)*, 413 B.R. 438, 480, 481 (Bankr. N.D. Tex. 2009).

[43] Motion at 7; December 17, 2012 email (Def. Exh. C-5); December 20, 2012 email (Def. Exh. C-6).

[44] December 20, 2012 email (Def. Exh. C-6).

[45] Motion at 6.

[46]  Seidel Decl'n (Exh. 1) at ¶ 4; *see also* Motion (discussing the lip dub and events leading up to it) at 2, 5–8; Redden Aff. (Def. Exh. D) at ¶ 6 and generally; Loyacano Aff. (Def. Exh. B), generally.

[47] Redden Aff. (Def. Exh. D) at ¶ 6.

[48] Text messages (Def. Exh. C-9); *see also* Redden Aff. (Def. Exh. D) at ¶ 7; Motion at 8.

protestations. Further, a reasonable inference can be drawn from NCISD's selected extraction of only part of the text conversation (i.e., failure to offer the entire text communication) that the remainder of that text conversation supports the inference that Redden directed (an indication of supervisory authority) Seidel over his protestations.

Additional Seidel testimony further supports Redden supervisory status.[49]

 NCISD appears to argue purported reasonableness of Principal Loyacano's conduct (which ignores respondeat superior principles and conduct of others), i.e., a negligence standard. However, "[u]nder the ADA, an employer has an affirmative obligation to provide a reasonable accommodation for a qualified individual with a disability. 42 U.S.C. § 12112(b)(5)(A). Accordingly, a failure-to-accommodate case gives rise to a form of strict liability, a proof scheme in which motive and intent are irrelevant."[50]

Further, as discussed in more detail below in section IV.B.(3), NCISD's failure to accommodate occurred not solely by Redden's conduct, but by the conduct of other NCISD agents as well. Thus, NCISD's motion addressed solely to Redden's conduct fails to prove entitlement to summary judgment.

**(3)   It Was Not Just Redden's Conduct by which NCISD Withdrew the Accommodations But Also by Conduct of Other NCISD agents  (Its Dean of Instruction, Assoc. Principal, Principal, and other Agents).**

Because NCISD's summary-judgment motion is based solely on refuting Redden's conduct as a basis for NCISD's respondeat superior liability and, in fact, NCISD's failure to accommodate occurred via the conduct of others' conduct as well, NCISD fails to prove entitlement to summary judgment.

As discussed previously above, both NCISD's Dean of Instruction and Associate

---

[49] Seidel Dep. extracts (Exh. 2) at p. 38, lines 6–8; p. 38, line 21–p.43, line 6; p. 53, lines 21–23.
[50] *Ragan v. Jeffboat LLC*, 149 F. Supp. 2d 1053, 1063 (S.D. Ind. 2001).

principal ordered clearly and forcibly (e.g., by ALL CAPS  language) all teachers (a group including Seidel) to attend the event without exception.

Further, other NCISD agents pressured Seidel further (from inside the gym door) into the gym.[51]

Further, NCISD-agent Principal Loyacano's conduct was a part of NCISD's failure to accommodate.  Simply agreeing to an accommodation is not the same as providing an accommodation. "[O]nce an employer agrees to provide a particular accommodation, it must act reasonably in implementing said accommodation."[52] In *Enica*, the Court found that though the parties agreed to an accommodation, there was sufficient evidence to establish a triable issue regarding whether the VA at times failed to implement  the accommodation.[53] As the Court explained:

> [T]here is evidence that the VA neglected to take substantive action in implementing the accommodations . . .  [T]he evidence supports a finding that an agreement was reached . . .  Despite this agreement, . . . , Enica was required to engage in . . . and *in spite of her objections, she allegedly received pressure from her supervisors to do so*. [Emphasis added][[54]]

Similarly, NCISD has not proven as a matter of law that NCISD on lip-dub day actually implemented the agreed-on accommodation and, in fact, there is evidence to the contrary.  In addition to the evidence previously discussed above regarding NCISD's failure to accommodate (e.g., Redden's directing of Seidel), there is additional evidence that NCISD did not implement its agreed-on accommodation. For instance, a reasonable inference can be drawn that Principal Loyacano did not adequately notify all necessary NCISD agents of the agreed-on

---

[51] Seidel Decl'n (Exh. 1) at ¶ 5; *see also* prior discussion above regarding respondeat superior being based, not solely on supervisor status, but agency principles that include several alternative bases for respondeat superior liability.

[52] *Enica*, 544 F.3d at 342.

[53] *Id.* at 342–44.

[54] *Id.* at 342, 343.

accommodation and the necessity of its implementation:

- both lip-dub emails (sent by  NCISD's Dean of Instruction and Associate principal and the second by the Dean only) were sent to all teachers (including Seidel) and instructed all teachers to attend the lip dub without noting any exceptions or without either of these supervisors otherwise communicating to Seidel that—despite the instruction that all teachers must attend and that instruction having been sent to Seidel—the emails did not really mean "all" and were not intended for Seidel;

- the head of Seidel's department (Redden) had not been informed of Seidel's accommodation;[55]

- Principal Loyacano's description of his actions to reasonably accommodate Seidel contain a complete absence of any identification of any actions he or any other NCISD agent took to implement the agreed-on accommodation;[56] Loyacano does not testify that he:

    o periodically (or ever, for that matter) emailed, sent by letter, or orally notified Seidel's department head or other NCISD agents of the agreed-on accommodation and the necessity of its implementation (i.e., that Seidel was exempt from attending all pep-rally type events and no one should ever take any action to try to obtain his attendance, whether by instruction, suggestion, pressuring,[57] or otherwise);[58]

    o on receiving the sent-to-all-teachers email instructing all teachers to attend the lip dub, notified the Dean of Instruction and Associate principal that the instruction should not have been sent to all teachers and that Seidel should be notified that the emails did not really mean "all" and he should not have been so instructed by the emails;[59] nor

    o sent anyone to escort Seidel's students to the entire-student-body-attendance[60] event[61] (though Loyacano opines that "the safety of students is the paramount

---

[55] Redden Aff. (Def. Exh. D) at ¶ 6.

[56] Loyacano Aff. (Def. Exh. B), generally.

[57] *See Enica*, 544 F.3d at 342, 343 (noting, in concluding that the employer failed to reasonably accommodate, that "in spite of [plaintiff's] objections, she allegedly received pressure from her supervisors to [engage in activity the employer had agreed plaintiff would be excluded from doing]").

[58] Loyacano Aff. (Def. Exh. B), generally.

[59] *Id.*

[60] Motion at 6.

concern for all employees at NCHS, and this is especially true of classroom teachers"[62]—Loyacano does not explain how Seidel's students would be escorted to and monitored at the lip dub if Seidel were not to attend and in light of NCISD failing to send anyone to take charge of Seidel's students for the event).

In fact, the description by Loyacano regarding whether he notified other NCISD agents of the accommodation in order to implement it is Loyacano's denial that he had ever advised Seidel's department head (Redden) of the accommodation.[63] His purported justification for that failure is "[b]ecause Redden was not Seidel's supervisor[.]"[64] The incident-in-question (including the instructing emails and Redden's directions to Seidel) shows that his purported justification was insufficient to implement the agreed-on accommodation. In fact, the emails from undisputed supervisors (Dean of Instruction and Associate principal) directing Seidel (as well as all other teachers) to attend the lip dub allows the reasonable inference that Principal Loyacano failed to instruct anyone on Seidel's accommodation, regardless of supervisory status, and that Loyacano's purported justification for failing to instruct Seidel's dept. head is simply an attempt at post-incident rationalization.

In short, because NCISD's summary-judgment motion is based solely on refuting Redden's conduct as a basis for NCISD's respondeat superior liability and, in fact, NCISD's failure to accommodate occurred via the conduct of others' conduct as well, NCISD fails to prove entitlement to summary judgment.

---

[61]  Loyacano Aff. (Def. Exh. B), generally.
[62] Loyacano Aff. (Def. Exh. B) at ¶ 13.
[63] Loyacano Aff. (Def. Exh. B) at ¶10, generally.
[64] *Id.*

## C.  NCISD'S INTERACTIVE-PROCESS-BREAKDOWN ARGUMENT DOES NOT SUPPORT SUMMARY JUDGMENT.

### (1)  Plaintiff Has Not Asserted a Claim Based on Interactive-Process Breakdown.

NCISD's interactive-process-breakdown argument is irrelevant to this case's issues. The interactive process if for *determining* what accommodation is reasonable.[65] When an employer "had already made a reasonable accommodation . . . the question becomes . . . whether it was reasonable for [the employer] to withdraw that existing accommodation."[66] Here, the parties already determined and agreed on what was a reasonable accommodation.

As *Isbell* explains:

[B]oth parties really miss the mark by focusing their attention on the question of whether a start time of 9:15 a.m. was reasonable. Because Crane had already made a reasonable accommodation a few years earlier when it permitted Isbell to start her work day at 10 a.m., the question becomes instead whether it was reasonable for Crane to withdraw that existing accommodation.[[67]]

Nor do NCISD's cited cases hold otherwise. *Agro* not involve withdrawal of and refusal to provide—in spite of plaintiff's request for—an already agreed-on reasonable accommodation.[68] Rather, *Agro* involved a plaintiff's request for a *different* accommodation and then *quitting* his job such that the employer did not have an opportunity to provide any type of accommodation.[69] Likewise, *Loulseged* did not involve withdrawal of and refusal to provide—in spite of plaintiff's request for—an already agreed-on reasonable accommodation.[70] Rather, in

---

[65] *Loulseged*, 178 F.3d at 735.

[66] *Isbell*, 30 F. Supp. 3d at 734; *see also Loulseged*, 178 F3d at 736 (stating, "Under the circumstances of this case, we do not believe that Loulseged was required to formally request a replacement accommodation when the previously agreed on system was withdrawn.").

[67] *Isbell v. John Crane, Inc.*, 30 F. Supp. 3d 725, 734 (N.D. Ill. 2014).

[68] *EEOC v. Agro Distrib. LLC*, 555 F.3d 462 (5th Cir. 2009).

[69] *Id.* at 471.

[70] *Loulseged*, 178 F.3d 731.

*Loulseged*, and similar to *Agro*, the employee *quit* his job such that the employer did not have an opportunity to provide any accommodation.[71] *Loulseged* also stated:

> [Plaintiff] correctly conceded that an employer is free to withdraw an accommodation *as long as the replacement accommodation is reasonable*. [Emphasis added].[72]

Here, the parties were not negotiating a replacement accommodation. The parties had already determined and agreed on what was a reasonable accommodation. The question here is simply whether NCISD failed to implement the agreed-on accommodation for the lip dub.

Likewise, *Ned* did not involve withdrawal of and refusal to provide—in spite of plaintiff's request for—an already agreed-on reasonable accommodation.[73] Rather, in *Ned*, because the employer did not have any idea of what accommodation would be needed, the employee was responsible for failing to request an accommodation and failing to try to "work out" a reasonable accommodation with his employer.[74] In contrast, in the present case the parties had *already* negotiated an agreed-on accommodation (i.e., had already concluded the interactive-process to determine a reasonable accommodation).

*Aryain* was not a failure-to-accommodate (or even an ADA) case; rather, it involved a Title VII sexual-harassment claim and related claims.[75] *Brandon* was not a failure-to-accommodate (or even an ADA) case; rather, it involved a title VII racial-discrimination claim and related claims.[76] Nor did it involve failure to provide an agreed-on reasonable accommodation nor liability avoidance via interactive-process-breakdown responsibility

---

[71] *Id.* at 735 (e.g., stating, "[Plaintiff] chose to quit a week before the earliest time she might have been asked to perform these duties. . . . Had she not quit, [Defendant] might have provided her with a squadron of Olympic weightlifters and a Mercedes-Benz chemical transport vehicle to aid her in her tasks.") and at 737 (stating, "One cannot negotiate with a brick wall.").

[72] *Id.* at 740 n.11.

[73] *Ned v. Opelousas Gen. Hosp.*, Civ. Act. No. 04-1536, 2007 U.S. Dist. LEXIS 21816 (W.D. La. Mar. 26, 2007).

[74] *Id.* at *53, *54.

[75] *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 476 (5th Cir. 2008).

[76] *Brandon v. Sage Corp.*, 808 F.3d 266, 268 (5th Cir. 2015).

determination. Likewise, neither *Beck* nor *Harter* involved withdrawal of and refusal to provide—in spite of plaintiff's request for—an already agreed-on reasonable accommodation.[77]

In short, NCISD's interactive-process-breakdown argument is irrelevant: the interactive process if for *determining* what accommodation is reasonable and, here, the parties were not determining a replacement accommodation. The parties had already determined and agreed on what was a reasonable accommodation. The question is simply whether NCISD failed to implement the agreed-on accommodation for the lip dub.

> **(2) NCISD Has Not Proven that as a Matter of Law Seidel Failed to Act in Good Faith in the Interactive Process and Thus Caused a Breakdown in the Interactive-Process (in other Words, such Is an Issue for which Reasonable Minds Could Disagree).**
>
> > a. <u>NCISD Has Not Proven that as a Matter of Law Seidel Failed to Act in Good Faith in the Interactive Process (in other Words, such Is an Issue for which Reasonable Minds Could Disagree).</u>

"Responsibility" for an interactive-process (to determine a reasonable accommodation) breakdown is based on a failure to engage in a good-faith interactive process.[78] The objective circumstances are important factors in that assessment.

For at least two reasons, NCISD has not proven that as a matter of law Seidel failed to act in good faith in the interactive process First, Seidel did not fail to act in good faith because, at the time NCISD's motion addresses, the interactive process had ended; there was no interactive process pending. The interactive process is for *determining* what accommodation is reasonable.[79] Here, the parties already determined and agreed on what was a reasonable accommodation. Thus,

---

[77] *Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130 (7th Cir. 1996); *Harter v. Univ. of Indianapolis*, 5 F. Supp. 2d 657 (S.D. Ind. 1998).

[78] *See Griffin v. UPS*, 661 F.3d 216, 224, 225 (5th Cir. 2011).

[79] *Loulseged*, 178 F.3d at 735.

the interactive-process to determine a reasonable accommodation had concluded and there was

no breakdown of that process. Thus, Seidel did not cause a breakdown of the interactive process.

Second, there is more than a scintilla of evidence that Seidel acted in good faith regarding

both the interactive process (i.e., regarding working toward a determination of a reasonable

accommodation) and NCISD- implementation of the agreed-on accommodation:

- Seidel requested and negotiated an agreed-on accommodation (i.e., concluded the interactive-process to determine reasonable accommodation);[80]

- Principal Loyacano did not notify:

  o all necessary NCISD agents of Seidel's agreed-on accommodation and the necessity of its implementation;[81]

  o the head of Seidel's department (Redden) of Seidel's agreed-on accommodation and the necessity of its implementation,[82] which was an intentional decision by Loyacano to not do so;[83]

- NCISD's Dean of Instruction and Associate Principal sent a campus wide email[84] apparently instructing all teachers (without any exception noted) to attend the lip dub;[85]

- the Dean of Instruction sent a follow-up email directed to all teachers[86] ordering, "YOU MUST WALK AND SIT WITH YOUR ASSIGNED STUDENTS IN THE BLEACHERS[.] [Dean's original all-caps emphasis];"[87]

- on receiving the campus-wide-sent emails instructing all teachers to attend the lip dub, Principal Loyacano took no action to ensure that Seidel's accommodation would be implemented (for example, by notifying NCISD agents that despite the email, no NCISD

---

[80] Motion at 2, 5.

[81] Loyacano Aff. (Def. Exh. B), generally; *see also* Motion (discussing Loyacano's actions regarding Seidel's accommodation) at 2, 4, 5 and (discussing the lip dub and events leading up to it) at 2, 5–8; Redden Aff. (Def. Exh. D) at ¶ 6 and generally;

[82] Redden Aff. (Def. Exh. D) at ¶ 6.

[83] Loyacano Aff. (Def. Exh. B) at ¶ 10, generally.

[84] Motion at 6; Redden Aff. (Def. Exh. D) at ¶ 6; December 17, 2012 email (Def. Exh. C-5).

[85] See discussion of December 17, 2012 email earlier above.

[86] Motion at 7; December 17, 2012 email (Def. Exh. C-5); December 20, 2012 email (Def. Exh. C-6).

[87] December 20, 2012 email (Def. Exh. C-6).

agent should take any action to try to obtain Seidel's lip-dub attendance, whether by instruction, suggestion, pressuring,[88] or otherwise);

- Seidel had reason to believe that Redden, as his supervisor, would notify him if something changed in his accommodation;[89]

- just a few hours before the lip dub, Redden reminded Seidel of "the *instructions . . . sent to the entire NCHS campus* [emphasis added ]requesting that teachers escort their classes to the gym and sitting with their students once inside the gym;"[90]

- though in some situations an employee can be excused for being too intimidated to object to an employer's refusal to accommodate,[91] Seidel did speak up, "insist[ing] he would not attend the 'lip dub;'"[92]

- Seidel's military training had taught him to obey orders of those above him in the chain of command;[93]

- during their conversation, Redden was aware of Seidel's military background;[94]

- despite Seidel's protestations (, Redden directed Seidel to attend the lip dub (Redden's later-sent text apology to Seidel stated NCISD "*needed everybody* [emphasis added] !" at the lip dub);[95]

- after Seidel's conversation with Redden, felt "as though he had been directed to attend" the lip dub;[96]

- at that time, NCISD had not and thereafter did not send anyone to escort Seidel's students to the entire-student-body-attendance[97] event,[98] and "the safety of students is

---

[88] *See Enica*, 544 F.3d at 342, 343 (noting, in concluding that the employer failed to reasonably accommodate, that "in spite of [plaintiff's] objections, she allegedly received pressure from her supervisors to [engage in activity the employer had agreed plaintiff would be excluded from doing]").

[89] Seidel dep.. extracts (Exh. 2) at deposition page 53 , lines 21–23.

[90] Redden Aff. (Def. Exh. D) at ¶ 6.

[91] *Enica*, 544 F.3d at 339 n.14.

[92] Redden Aff. (Def. Exh. D) at ¶ 6.

[93] *See* 10 U.S.C. § 892 - Art. 92 ("Failure to obey order or regulation") (stating, "Any person subject to this chapter who— (1) violates or fails to obey any lawful general order or regulation; (2) having knowledge of any other lawful order issued by a member of the armed forces, which it is his duty to obey, fails to obey the order; or . . . ; shall be punished as a court-martial may direct.").

[94] Redden Aff. (Def. Exh. D) at ¶ 5.

[95] Text messages (Def. Exh. C-9); *see also* Motion at 8.

[96] Motion at 2; *accord id.* at 17.

[97] Motion at 6.

[98] Seidel Decl'n (Exh. 1) at ¶ 4; *see also* Motion (discussing the lip dub and events leading up to it) at 2, 5–8;

the paramount concern for all employees at NCHS, and this is especially true of classroom teachers;" and

- NCISD agents pressured Seidel further (from inside the gym door) into the gym.[99]

In short, on the last day of the fall semester—which was an early-release day, a day of preparation for the entire-student-body lip dub, and a day in which Seidel had only one school period without class and no period without responsibility for students in his classroom (per Principal Loyacano, "the safety of students is the paramount concern for all employees at NCHS, and this is especially true of classroom teachers")—just a few hours before lip dub, Redden ambushed Seidel by ordering him to attend the lip dub. It is not surprising that, after Redden refused to change her order despite Seidel's protestations, Seidel obeyed that order by his department head, particularly in light of the prior to-all-teachers orders of  NCISD's Dean of Instruction and Associate Principal, the need for teacher supervision of Seidel's students, NCISD's failure to send an agent to take Seidel's students to and attend with at the lip dub, and the paramount concern for student safety (i.e., the need for teacher supervision of Seidel's students while moving to and attending the lip dub).

Similar to the present case is *Valentine* wherein genuine issues of material fact existed:

> [T]he next series of genuine issues of material fact arises. . . . whether AHS withdrew the offer before or after Valentine had accepted it; and whether it was reasonable for AHS to withdraw the offer. This last genuine issue of material fact . . . is also related to the question of whether the withdrawal of the offer was a 'bad faith' interference with the interactive process . . . [ [100]]
>
> * * *
>
> . . . , the withdrawal of a reasonable offer of accommodation after it has been accepted would give rise to an inference of illicit motive. . . . Therefore, genuine

---

Redden Aff. (Def. Exh. D) at ¶ 6 and generally; Loyacano Aff. (Def. Exh. B), generally.

[99] Seidel Decl'n (Exh. 1) at ¶ 5; *see also* prior discussion above regarding respondeat superior being based, not solely on supervisor status, but agency principles that include several alternative bases for respondeat superior liability.

[100] *Valentine*, 939 F. Supp. at 1400.

issues of material fact at these later stages of the burden-shifting analysis also preclude summary judgment in AHS's favor on Valentine's ADA claim.[[101]]

Whether any party and, if so, which, failed to act in good faith in the interactive process is generally a subject on which reasonable minds could differ.[102]

Though NCISD argues Principal Loyacano had no reason to believe otherwise that Seidel continued to be excused from pep rallies,[103] it is NCISD's knowledge,[104] not Loyacano's, that is pertinent. Further, Loyacano did have reason to believe that Seidel might not receive his accommodation on lip-dub day.  As discussed earlier, Loyacano knew he had not notified NCISD's agents, including Seidel's dept. chart, of the accommodation and necessity of its implementation and knew of the Dean of Instruction's and Associate Principal's emails ordering (one of the emails doing so in ALL CAPS) all teachers to bring and sit with their students during the lip dub.

> b. NCISD Has Not Proven that as a Matter of Law Seidel Caused a Breakdown in the Interactive-Process by His Purported Failure to Act in Good Faith in the Interactive Process (in other Words, such Is an Issue for which Reasonable Minds Could Disagree).

NCISD has not proven that as a matter of law any purported Seidel failure to engage in good faith participation in the interactive process caused a breakdown of that process. First, an accommodation had been agreed to, thus there was no pending interactive process and, thus, Seidel could not have caused it to breakdown. Second, per section IV.C.(2)a. above, there is more than a scintilla of evidence that any purported Seidel failure to act in good faith in the interactive process was not the cause of any purported breakdown of that process for determining

---

[101] *Id.* at 1401, 1402.

[102]*See id.*; *Gilbert v. City of St. Charles*, No. 96 C 7101, 1999 U.S. Dist. LEXIS 4095, at *26-*29 (N.D. Ill. 1999); *Peterson v. Shins*eki, Civ. No. 11-cv-03036-CL, 2012 U.S. Dist. LEXIS 186402, at *39-*43 (D. Or. Dec. 20, 2012), *adopted*, 2013 U.S. Dist. LEXIS 25085 (D. Or. Feb. 21, 2013).

[103] Motion at 9.

[104] NCISD is imputed with the knowledge of its agents. *Ishee v. Fannie Mae*, No. 15-60129, 2016 U.S. App. LEXIS 4726, at *8 (5th Cir. Mar. 14, 2016)

a reasonable accommodation or of NCISD's implementation of the agreed-on accommodation.

NCISD's discussion of its post-lip-dub day conduct[105] is irrelevant. Further, "a failure-to-accommodate case gives rise to a form of strict liability, a proof scheme in which motive and intent are irrelevant."[106]

## V.   CONCLUSION

Defendant's summary-judgment Motion should be denied. NCISD's Redden-is-not-a-supervisor defense fails because (1) NCISD is not entitled to summary judgment regardless whether Redden was or was not a supervisor; (2) reasonable minds could disagree regarding whether Redden was a supervisor; and (1) NCISD failed to accommodate not just by Redden's conduct but also by the conduct of other NCISD agents (its Dean of Instruction, Associate principal, Principal, and other agents).

This case does not involve breakdown of the process for determining what is a reasonable accommodation. Rather, this case involves failure to provide an already agreed-on accommodation. Further, reasonable minds could disagree regarding whether Seidel acted in good faith regarding both the interactive process (i.e., regarding working toward a determination of a reasonable accommodation) and NCISD- implementation of the agreed-on accommodation. Seidel requested and negotiated the agreed-on accommodation and whether any such purported failure to act in good faith caused a breakdown in the interactive process to determine what is a reasonable accommodation (as well as a breakdown in NCISD- implementation of the agreed-on accommodation).

---

[105] Motion at 20, 21 (entitled "*3. NCISD's good faith participation in the interactive accommodation process is further demonstrated by the Dist exceeding its obligations to do so in continuing to accommodate P after he could no longer teach.*").

[106] *Ragan*, 149 F. Supp. 2d at 1063.

Respectfully submitted,

LAXTON LAW PLLC
22704 Loop 494, Suite C
Kingwood, TX 77339
Tel: (281) 570-2588
Fax: (877) 224-5283

By: _____

Harry Laxton Jr.
Texas State Bar No. 12061762
Texas Southern District Bar No. 906711
hlaxton@intellectual-property-laxton.com

Delona Laxton
State Bar No. 24078837
Texas Southern District Bar No. 1384440
delona@laxtonlaw.com

Attorneys for PlaintiffStephen Seidel

CERTIFICATE OF SERVICE

I hereby certify on March 25, 2016, I am causing this instrument to be served by the ECF

system from the Southern District of Texas to all counsel of record.

_____

Harry Laxton Jr.

26